UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                                  **Hon. Hugh B. Scott**

               v.                                    07CR29S

                                                  **Report**
                                                    **&**
Colin Greenaway                             **Recommendation**
also known as Wayne Smart,

                              Defendant.
_____

Before the Court is the defendant's omnibus motions seeking various relief, including the suppression of evidence (Docket No. 112).[1]

**Background**

In a Superceding Indictment issued on October 30, 2008, defendant Colin Greenaway also known as Wayne Smart (referred to herein as "Smart"), was charged with conspiracy to possess and distribute methylenedioxymethamphetamine ("MDMA") in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C) [Count 1]; unlawful use and possession of a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. §924(c)(1)(A)(i)[Count 2]; unlawful possession with

---

[1] The discovery issues are the subject of a separate Decision & Order.

1

intent to distribute MDMA in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C) [Count 3]; carrying and brandishing a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. §924(c)(1)(A)(ii) and (2) [Count 4]; assaulting and resisting law enforcement officers while engaged in the performance of their official duties in violation of 18 U.S.C. §111 (a)(1), §111(b) and §2 [Count 5]; using and brandishing a firearm in relation to a crime of violence in violation of 18 U.S.C. §924(c)(1)(A) and §2 [Count 6]; destruction of property (marijuana) preventing and impairing the government from taking such property into its custody and control in violation of 18 U.S.C. §2232(a) [Count 7]; and forfeiture of the various firearms and ammunition seized pursuant to 19USC §924(d).

The defendant seeks to suppress certain statements and evidence. A similar motion, involving the same evidence and statements, was made by Smart with respect to the original Indictment in this case. A suppression hearing was held on January 16, 2008, March 31, 2008, and April 17, 2008. The hearing revealed that on January 11, 2007, Christopher Wisniewski, a Special Agent with the United States Drug Enforcement Administration ("DEA") received a tip from the Department of Homeland Security advising that an individual who identified himself as "Colin Greenaway"[2] was staying in Room 307 at the Comfort Inn Suites in Buffalo and that there was a large quantity of crack cocaine and a large sum of money in his room. (R1. 5)[3]. Wisniewski testified that the hotel management advised him that the housekeeping staff reported

---

[2] A Canadian drivers license for an individual named "Colin Roley Greenaway" was subsequently found in the hotel room. The government contends that Smart used this identification to rent the hotel room. (R1. 54, 61, 162). For the purposes of the suppression hearing, Smart stipulated to these facts. (R1. 204).

[3] References designated "R1" refer to the original suppression hearing held on January 16, 2008 and March 31, 2008.

seeing a large quantity of crack and a large amount of money in the room (R. 9).[4] Wisniewski was allowed to review the maintenance and housekeeping reports relating to the room occupied by Smart. One notation dated January 10, 2007 stated that a "strong odor of pot" was coming out of Room 307. (R1. 8). Wisniewski, and another DEA agent, Christian Ulmer, established surveillance in Room 308 across the hall from Room 307. (R1. 11). Eventually, Ulmer encountered Smart in the hallway and entered into a conversation. Ulmer asked Smart if he had a blunt. Smart asked Ulmer if he wanted a blunt or a blunt wrapper. Ulmer replied: "blunt wrapper." At which point, Smart allegedly gave Ulmer a cigar. (R1. 13-14; 146-147). After agents approached certain individuals who had come out of Smart's room, the agents determined that their surveillance would be compromised if the individuals who came out of the room were allowed to communicate with Smart and whoever else remained in the room. The agents formulated a plan, in which Ulmer, would approach Room 307, knock on the door and see if Smart would open the door and cooperate. (R1. 18, 148). As Ulmer approached the door, Wisniewski and another officer were hiding nearby; they could see and hear Ulmer, but could not fully observe the doorway. (R1. 19). After Ulmer knocked on the door, Smart eventually answered and opened the door. Ulmer asked Smart for another blunt wrapper. (R1. 101). Wisniewski testified that Smart stated that he did not have another blunt and was "kind of short" with Ulmer. (R1. 20). When Smart attempted to close the door, Ulmer announced himself as a law enforcement officer and put his foot in the door to prevent it from closing. (R1. 21, 151).

---

[4] According to Wisniewski, he did not meet with the housekeeping staff member in person (she had already gone home that day)(R1. 59), however, the information given to him led him to believe that the housekeeper may have had some previous exposure or experience with crack cocaine or cocaine or other drugs. (R1. 10, 65).

3

Wisniewski moved in to assist Ulmer. As the pushing and shoving of the door ensued, an arm holding a black semi-automatic pistol was extended out of the door by someone inside the room. (R1. 22-23, 152).[5] Both officers testified that they heard a "click" indicating that an attempt to fire the weapon was made. (R1. 23, 152). At this point he and Ulmer jumped out of the way, and the door to Smart's room closed. (R1. 23-24). According to Wisniewski, for approximately two minutes they heard "a lot of commotion in the room" and he thought that they were flushing drugs down the toilet or trying to plan an escape route. (R1. 25-26). Wisniewski testified that after a few minutes "a person with a Jamaican accent" spoke back and indicated that they were going to surrender. (R1. 25). Eventually, the door was opened, the gun was recovered and Smart and Camara Griffin[6] were arrested. (R1. 29).

Ulmer testified that he read the Miranda[7] warnings to Smart within a few minutes before being removed from the room and that he acknowledged that he understood his rights. (R1. 117, 156). According to Ulmer, Smart stated that all they did was "flush a little bit of marijuana." (R1. 156-157). A full search of the hotel room was conducted. (R1. 134). In a Report & Recommendation dated October 23, 2008, the Court recommended that Smart's motion to suppress the physical evidence obtained following a search of the room be denied. (Docket No. 82). With respect to the alleged statements made by Smart, the Court recommended that the motion to suppress be granted inasmuch as the government had not established what warnings had

---

[5] It was subsequently determined that the person who had pointed the gun at the agents was Griffin, not Smart. (R1. 111, 160).

[6] Griffin pled guilty and has been sentenced in this matter. (Docket Nos. 121, 124).

[7] Miranda v. Arizona, 384 U.S. 436 (1966).

4

been provided to Smart prior to his statement.[8] The District Court accepted the findings of the October 23, 2008 Report & Recommendation with respect to the motion to suppress the physical evidence, but recommitted the motion to suppress to the undersigned for further proceedings relating to the contents of the advice of rights card used by Ulmer. (Docket No. 96).

In addition to the recommitted issue relating to Smart's statements at the time of arrest, the defendant seeks to suppress any statements by him which were recorded while he was incarcerated at the Erie County Holding Center.

## Discussion

Statements Made At Time of Arrest

On October 6, 2009, another suppression hearing was held with respect to the recommitted question relating to Smart's statements made at the time of arrest. Ulmer testified at the hearing. He stated that prior to Smart making any statements, he provided the defendant with his Miranda warnings from a warnings card. Ulmer read the entire contents of the warnings card he used with respect to Smart. The warning card was then received into evidence. Specifically, Ulmer testified that he advised Smart of the following: that he had a right to an attorney; that anything he says could be used against him in Court; that he had the right to talk to a lawyer for advice before being asked questions and to have a lawyer with him during questioning; that if he could not afford a lawyer, one would be appointed for him before any questioning if he wished so. Ulmer testified that he asked Smart if he understood and are you willing to answer any questions.

---

[8] Although asserted again in the defendant's subsequent omnibus motion, the defendant has raised no knew issues relating to the suppression of physical evidence. The District Court's adoption of the October 23, 2008 resolves these issues.

According to Ulmer, Smart stated that he understood his rights and was willing to answer questions. Ulmer stated that he asked Smart, something to the effect: "What took you so long to answer the door?" Ulmer testified that Smart stated: "All we did was flush a little marijuana."[9]

The defendant's post hearing memorandum does not address the adequacy of the warnings provided to Smart at the time of his arrest. (Docket No. 126). So long as the warnings given adequately convey to the defendant the substance of the rights, the precise language of the warnings need not mirror the language of the <u>Miranda</u> opinion. <u>California v. Prycosk</u>, 453 U.S. 355, 359-61 (1981). The warnings provided to Smart by Ulmer in this case were adequate under <u>Miranda</u> and its progeny. <u>United States v. Burns</u>, 684 F.2d. 1066, 1074-75 (2d. Cir. 1982). The record in this case does not provide any basis to conclude that Smart did not understand his rights or asked for an attorney prior to making any statement. The alleged statement made at the time of his arrest was knowingly and voluntarily made after he had been adequately advised of his rights.

The motion to suppress the statement made at the time of his arrest should be denied.

<u>Statements Recorded at Erie County Holding Center</u>

The defendant also seeks to suppress any tape recordings of conversations made between Smart and other individuals which took place using a phone at the Erie County Holding Center. The defendants denies that he consented to the recording of these phone calls.

A continued suppression hearing was held as to this issue on November 2, 2009.[10]

---

[9] Ulmer testified that Smart may have used the word "weed" instead of "marijuana."

[10] References designated as "R2" refer to the transcript of the November 2, 2009 hearing (Docket No. 118).

Sheriff's Deputy Joseph F. Higgins from the Erie County Holding Center (ECHC") testified he is the telecommunications officer at the ECHC. He stated that all outgoing calls, except those to the individual's attorney, are recorded. (R2 at page 4-5). Higgins stated that calls are monitored for institutional security reasons; to prevent the importation of contraband or to discover plots regarding possible escapes or riots. (R2 at page 6). At issue are three calls Smart made from the ECHC on June 18, 2007. (R2 at page 7). According to Higgins, at the beginning of a call, a voice prompt is given to both the caller (at the ECHC) and the recipient of the call advising both that the call is subject to monitoring and recording. (R2 at page 8). A CD containing the recordings of the three calls reflects that a voice states, clearly and audibly at the beginning of the call, the following warning: "This call is subject to monitoring and recording." Government Exhibit 17.

      Where the defendant has been advised that a phone call made from a correctional facility is subject to monitoring and recording, and continues the telephone call notwithstanding that warning, it is well settled that the defendant has impliedly consented to the recording of the conversation. United States v. Amen, 831 F.2d 373 (2d. Cir. 1987)(Inmates impliedly consented to interception of their telephone calls by using prison telephones when they were on notice of the prison's interception policy); United States v. Workman, 80 F.3d 688 (2d. Cir. 1996.)(Inmate had sufficient warning of prison's telephone monitoring program such that his use of prison telephones implied consent to surveillance; warning signs near each telephone indicated that all conversations were subject to monitoring, inmate received orientation handbook that provided further notice of monitoring program, regulations then in force provided public notice, and inmate's statements in recorded conversations showed that he was aware that calls might be monitored); United States v. Green 842 F.Supp. 68 (W.D.N.Y. 1994)(Implied consent existed to record state prison inmate's

7

telephone conversations for use in criminal prosecutions, even though inmate was never told that use of telephone system constituted consent to be recorded or that prison could use tapes as incriminating evidence and he thought he was being monitored but not recorded, where inmate was informed that prison system had ability to monitor telephone calls, and on several occasions inmate either warned parties he called of monitoring or used code to talk about alleged criminal activity during telephone conversations); United States v. Willoughby 860 F.2d. 15 (2d. Cir. 1988)(Correctional center's automatic taping and random monitoring of telephone conversations was reasonable invasion of inmate's privacy rights under Fourth Amendment, even if inmate was pretrial detainee; recording and monitoring of telephone calls was done in interest of institutional security).

  The defendant argues that implied consent does not exist here because no signage was placed near the phone providing a separate, additional warning that the call may be monitored or recorded.[11] The defendant also argues that Higgins acknowledged that the ECHC is a loud place and that Higgins had no personal knowledge of whether Smart actually heard the automated voice warning. (Docket No. 126 at pages 7-9). The defendant has not cited any authority stating that multiple warnings, or any particular type of warning was required, before consent to record may be implied. The automated voice warning, given clearly and audibly at the beginning of any phone conversation is sufficient to place the defendant on notice that the conversation he is about to have is subject to monitoring and recording. By continuing with the conversations

---

[11] Higgins testified that Smart would have eventually received a handbook which also contained a warning that all outgoing calls were subject to monitoring and recording. Because Smart made his calls before the booking process was completed he did not have the handbook at that time. (R2 at page 19).

8

notwithstanding the warning, the defendant impliedly consented to the monitoring and recording.

Based on the above, the motion to suppress should be denied.

**Conclusion**

Based on the above, it is recommended that the motion to suppress the respective statements made by Smart should be denied.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 16, 2010